# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| DANIEL JIMENEZ and DEBORAH JIMENEZ, *on behalf of themselves and all others similarly situated*, | ) ) ) ) | |
| Plaintiffs, | ) ) | Complaint – Class Action |
| v. | ) ) ) | Civil Action No. 1:24-cv-979 |
| REAL TIME RESOLUTIONS, INC., | ) ) | |
| Defendant. | ) | |

Plaintiffs Daniel Jimenez and Deborah Jimenez ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against Real Time Resolutions, Inc. ("Defendant") and allege the following upon personal knowledge as to their own acts, and upon information and belief derived from, among other things, investigation of counsel, as to all other matters:

## **PRELIMINARY STATEMENT**

1. On December 27, 2006, Plaintiffs purchased a home in Cabarrus County, North Carolina for $377,000. They financed the purchase of their home with two mortgage loans from Lehman Brothers Bank—a first mortgage loan in the amount of $301,600 and a second in the amount of $37,700. Aurora Loan Services, LLC ("Aurora"), a subsidiary of Lehman Brothers Holdings, was the mortgage servicer for both loans.

2. During the Great Recession in 2008, Plaintiffs defaulted on the second

mortgage loan due to unexpected financial hardship. As a result of Plaintiffs' default, Lehman Brothers Bank or its successor-in-interest (collectively referred to herein as "LBB") accelerated the second mortgage debt and demanded payment of the full amount due under the terms of the promissory note.

3.    In 2008, Plaintiffs owed more on both mortgage loans than their house was worth. As such, LBB would have received little to no money by foreclosing on the smaller, second mortgage. So, instead of filing a foreclosure, LBB "charged off" the debt, which allowed LBB to write off the second mortgage loan as a loss and reduce its tax liability. Around this time, Aurora stopped sending monthly mortgage statements to Plaintiffs. The last statement Plaintiffs ever received for the second mortgage loan was in December 2008.

4.    After hearing nothing about the second mortgage loan for over 15 years, on February 13, 2024 Plaintiffs were served with a foreclosure notice on the second mortgage by Defendant, who, upon information and belief, bought the charged-off mortgage loan from LBB. In the pending foreclosure, Defendant claims that the amount owed for the second mortgage loan—which was originally $37,700—has now ballooned to over $100,000, including nearly $65,000 in interest which has allegedly accrued since 2008.

5.    Defendant's foreclosure is unlawful because it is barred by North Carolina's 10-year statute of limitations for mortgage foreclosures. Defendant's attempt to foreclose on a time-barred mortgage constitutes a violation of the Fair Debt Collection Practices Act ("FDCPA") and the North Carolina Collection Agency Act ("NCCAA"). In addition, Defendant's retroactive assessment of interest and fees on Plaintiffs' charged-off mortgage loan violates the Truth in Lending Act ("TILA") because Defendant and its predecessors-

in-interest failed to send periodic statements to Plaintiffs after the charge off.

6.     Plaintiffs' situation is not unique.  Homeowners across the country who survived the foreclosure crisis of the Great Recession are now facing a new wave of foreclosures on "zombie mortgages."  These are old, charged-off mortgage loans like Plaintiffs' second mortgage which debt collectors like Defendant attempt to bring "back from the dead" in order to collect years of alleged interest and fees that homeowners had no idea were accruing.

7.     Plaintiffs bring this action on behalf of themselves and a nationwide class of homeowners seeking redress for Defendant's violations of the FDCPA and TILA. Plaintiffs also bring this action on behalf of themselves and two North Carolina sub-classes for additional violations of the FDCPA and NCCAA.  Finally, Plaintiffs request that the Court enter a declaratory judgment that all amounts of interest and fees assessed for periods during which Defendant or its predecessors-in-interest failed to send periodic mortgage statements are unlawful and invalid, and further, that the Court order Defendant to disgorge all unlawful interest and fees which it has collected from Class Members.

**<u>JURISDICTION AND VENUE</u>**

8.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k.

9.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District

and Division.

## PARTIES

11.     Plaintiffs are natural persons living in Cabarrus County, North Carolina.

12.     The alleged debt that is the subject of this action and which Defendant seeks to collect arose out of a residential mortgage loan transaction that was primarily for personal, family, or household purposes.  Therefore, Plaintiffs are "consumers" as that term is defined in the FDCPA (15 U.S.C. § 1692a(3)), TILA (15 U.S.C. § 1602(i) and 12 C.F.R. § 1026.2), and the NCCAA (N.C.G.S. § 58-70-90).

13.     Defendant is a Texas corporation with its principal place of business in Dallas, Texas.  Defendant is authorized to do business in North Carolina and has a registered office in Raleigh, North Carolina.

14.     Upon information and belief, Defendant's primary business is purchasing second mortgage loans in default for nominal amounts and then seeking to recover the full amounts from consumers plus years of alleged interest and fees.  Defendant accomplishes this through various means of debt collection, including the foreclosure sales of consumers' homes.

15.     Defendant is a "debt collector" as defined in 15 U.S.C. § 1692a(6) because Defendant uses interstate commerce in its business, the principal purpose of which is debt collection.

16.     Defendant is a "servicer" as defined in 12 C.F.R. § 1026.41 for purposes of TILA (Regulation Z).

17.     Defendant is also a "collection agency" as that term is defined in N.C.G.S. §

4

58-70-15.

18.     The mortgage notes purchased by Defendant have often been in default for years and collection on the debt is time-barred.  Nevertheless, Defendant seeks to collect amounts not permitted by law or the underlying loan agreements by, among other things, retroactively adding unlawful interest and fees and foreclosing on time-barred mortgages.

## FACTUAL BACKGROUND

19.     Plaintiffs bought their home in Cabarrus County, North Carolina in December 2006.  They financed the purchase with two mortgage loans from LBB which were secured by first and second deeds of trust against their home.  Aurora serviced the mortgage loans.

20.     Plaintiffs' second mortgage loan was in the principal amount of $37,700, with interest at an annual rate of 11%.  The loan was payable in monthly installments of principal and interest in the amount of $359.03 per month beginning on February 1, 2007.

21.      In 2008, Plaintiffs suffered a financial hardship when tenants in a rental home owned by Plaintiffs stopped paying rent.  As a result, Plaintiffs defaulted on their second mortgage loan by failing to make the monthly payment of principal and interest for July 2008.

22.     Shortly thereafter, LBB accelerated the debt, demanding immediate payment of all sums due under the terms of the promissory note and secured by the second deed of trust.

23.     Aurora sent a letter to Plaintiffs dated September 26, 2008, including a "Special Forbearance Agreement," which stated that the lender had "accelerated and

5

declared due in full all sums" owed under the second mortgage loan.

24. In December 2008, Plaintiffs received a monthly mortgage statement from Aurora which was the last statement they would ever receive for the second mortgage loan.

25. In February 2009, LBB "charged off" the second mortgage loan debt, which allowed it to write off the loan as a loss and reduce its tax liability. LBB reported the "charge off" to the credit bureaus, and the "charge off" is reflected on Mr. Jimenez's credit report.

26. In or around April 2009, Plaintiffs called Aurora to ask about the second mortgage loan and were told that it had a "zero balance."

27. Upon information and belief, sometime after April 2009, Defendant purchased the second mortgage loan from LBB.

28. On February 13, 2024, Plaintiffs were served with a foreclosure notice on the second mortgage filed by Defendant.

29. According to a letter dated February 2, 2024 from Defendant's attorneys, the total amount due on the loan was $103,374.87, which was comprised of the principal balance of $37,453.86; interest in the amount of $64,568.58; and attorneys' fees and costs of $1,352.43. A copy of the February 2, 2024 letter is attached hereto as Exhibit 1.

30. Another letter from Defendant's attorneys dated May 30, 2023 was also included in the foreclosure file. This letter, which Plaintiffs never received, stated that Plaintiffs were in default on the second mortgage loan; that as of the date of the letter, the amount due on the loan was $98,966.32; and that failure to cure the default within 45 days may result in a foreclosure sale of Plaintiffs' home. A copy of the May 30, 2023 letter is

6

attached hereto as <u>Exhibit 2.</u>

31.     Upon information and belief, either the May 30, 2023 letter or the February 2, 2024 letter was the initial written communication sent by Defendant to Plaintiffs in connection with the collection of the second mortgage loan debt.  The May 30, 2023 letter and the February 2, 2024 letter are collectively referred to herein as the "Initial Written Communication."

32.     In North Carolina, the statute of limitations for commencing a foreclosure action is 10 years, and accrues from the date of acceleration of the loan.  *See* N.C.G.S. § 1-47; *Real Time Resolutions, Inc. v. Cole*, 902 S.E.2d 269, 272 (N.C. Ct. App. 2024).

33.     Plaintiffs' second mortgage loan was accelerated in 2008.   Therefore, Defendant's right to foreclose on the second mortgage became time-barred in 2018. Nevertheless, Defendant initiated a foreclosure proceeding on February 5, 2024—over five years after the statute of limitations had expired.

34.     Defendant also attempted to collect illegal interest on Plaintiffs' second mortgage loan.

35.     The Truth in Lending Act (Regulation Z) mandates that a "servicer"—a term that includes the "creditor, assignee, or servicer"—must send periodic statements to a consumer for a residential mortgage loan.  12 C.F.R. § 1026.41.

36.     With respect to "charged off" loans like Plaintiffs' second mortgage loan, a servicer is exempt from sending periodic statements to the consumer; however, the servicer may not "retroactively assess fees or interest on the account" for any period of time during which periodic statements were not sent to the consumer.  12 C.F.R. § 1026.41(e)(6).

7

37. Defendant never sent Plaintiffs a single periodic mortgage statement. The last mortgage statement Plaintiffs received was from Aurora in December 2008. Therefore, Defendant cannot retroactively assess almost $65,000 in interest on Plaintiffs' second mortgage loan, as it has attempted to do in the pending foreclosure proceeding.

38. Plaintiffs have suffered actual damages as a result of Defendant's attempt to foreclose on the time-barred second mortgage and collect illegal interest and fees, as well as Defendant's false and misleading representations concerning the second mortgage loan. The stress of the pending foreclosure has caused emotional distress to Plaintiffs. For example, Mr. Jimenez has developed acute insomnia. Further, when Defendant demanded payment of the second mortgage loan, including interest and fees to which Defendant was not entitled, it immediately had the effect of reducing the equity Plaintiffs' home. Finally, Plaintiffs have missed work to attend multiple foreclosure hearings.

## CLASS ACTION ALLEGATIONS

39. Plaintiffs bring this action on behalf of themselves and on behalf of all people in the following classes (collectively referred to as "Class Members"):

a. Nationwide Charged-Off Mortgage Class: All persons (a) with a "charged off" mortgage loan owned or serviced by Defendant, (b) to whom Defendant caused written correspondence to be sent in the one year predating the filing of this lawsuit through the date of certification, (c) that contained a representation that the person owed interest and/or fees for time periods during which the person did not receive periodic mortgage statements.

8

b.　　Nationwide Time-Barred Mortgage Class: All persons (a) with a mortgage loan owned or serviced by Defendant, (b) to whom Defendant caused written correspondence to be sent in the one year predating the filing of this lawsuit through the date of certification, (c) that contained a representation that Defendant had the right to foreclose on the mortgage, and (d) the written correspondence was sent after the expiration of the applicable statute of limitations to foreclose on the mortgage.

c.　　Nationwide Debt Validation Notice Class: All persons (a) with a mortgage loan owned or serviced by Defendant, (b) to whom, within the one year period predating the filing of this lawsuit through the date of certification, (c) Defendant sent an initial communication to collect on the mortgage loan, but (d) failed to provide, within 5 days of the initial communication, written notice to the person that (i) unless the person disputed the validity of the debt within 30 days, Defendant would assume the debt to be valid, (ii) if the person disputed the debt, Defendant would obtain verification of the debt and mail it to the person, or (iii) upon written request, Defendant would provide notice of the name and address of the original creditor.

d.　　North Carolina Charged-Off Mortgage Class: All persons (a) with a "charged off" North Carolina mortgage loan owned or serviced by Defendant, (b) to whom Defendant caused written correspondence to be sent in the four years predating the filing of this lawsuit through the date of certification (c) that contained a representation that the person owed interest and/or fees for time periods during which the person did not receive periodic mortgage statements.

e.　　North Carolina Time-Barred Mortgage Class: All persons (a) with a

North Carolina mortgage loan owned or serviced by Defendant (b) to whom Defendant caused written correspondence to be sent in the four years predating the filing of this lawsuit through the date of certification (c) that contained a representation that Defendant had the right to foreclose on the mortgage, and (d) the written correspondence was sent more than 10 years after the acceleration or maturity of the mortgage loan.

40.    Each of the above class definitions is a placeholder that "may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C).

41.    Plaintiffs and each putative Class Member suffered a concrete injury-in-fact as a result of Defendant's misrepresentations, Defendant's failure to send debt validation notices, and Defendant's attempts to collect and foreclose on time-barred mortgages. These injuries include adverse impacts on debt-making decisions, emotional distress, a reduction in home equity, and payment of improper interest and fees through regular payments, modifications, or foreclosure of their homes.

42.    Excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

43.    **Numerosity.  Fed. R. Civ. P. 23(a)(1).** Upon information and belief, the Class Members within each class are so numerous that joinder of all is impractical. Upon information and belief, Defendant owns and services hundreds of non-performing mortgage loans according to the same procedures for assessment of interest and fees, collections, and foreclosure. The identity of class members may be determined based on the internal business records of Defendant and Class Members may be notified of the

10

pendency of this action by mail and/or publication based on information in the possession of Defendant.

44. **Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all Class Members, and there are no material factual or legal issues that differ between the members within each class. Common questions of law and fact include, but are not limited to:

a. Whether Defendant violated 15 U.S.C. § 1692e by attempting to collect interest and/or fees during periods when Plaintiffs and Class Members did not receive periodic statements;

b. Whether Defendant violated TILA and Regulation Z, 12 C.F.R. § 1026.41(e)(6), by attempting to collect interest and/or fees during periods when Plaintiffs and Class Members did not receive periodic statements;

c. Whether Defendant violated 15 U.S.C. § 1692f by attempting to collect and foreclose on the mortgage loans of Plaintiffs and Class Members after the expiration of the applicable statute of limitations for foreclosure of the mortgage;

d. Whether Defendant violated 15 U.S.C. § 1692g by failing to provide Plaintiffs and Class Members the required disclosures regarding debt validation and identification of the original creditor;

e. Whether Defendant violated N.C.G.S. §§ 58-70-1, et seq. by attempting to collect interest and/or fees during periods when

11

Plaintiffs and Class Members did not receive periodic statements;

f.   Whether Defendant violated N.C.G.S. §§ 58-70-1, et seq. by attempting to collect and foreclose on the mortgage loans of Plaintiffs and Class Members after the expiration of the applicable statute of limitations for foreclosure of the mortgage; and

g.   Whether Plaintiffs and Class Members are entitled to recover damages from Defendant.

45.   **Typicality.  Fed. R. Civ. P. 23(a)(3).**  Plaintiffs' claims are typical of the claims of all members of the classes and subclasses.  Plaintiffs are entitled to relief under the same causes of action as the members within each class, and all claims are based on the same legal theories and material facts.

46.   **Adequacy of Representation.   Fed. R. Civ. P. 23(a)(4).**  Plaintiffs are adequate representatives of the classes and subclasses because their interests are aligned with, and not antagonistic to, the interests of the class members they seek to represent. Plaintiffs have retained counsel experienced in class action litigation, and they intend to prosecute this action vigorously on behalf of the class members.  Plaintiffs and their counsel will fairly and adequately protect the class members' interests, and neither Plaintiffs nor their counsel have any interests which might cause them not to do so.

47.   **Declaratory and Injunctive Relief.  Fed. R. Civ. P. 23(b)(2).**  With respect to the Nationwide Charged-Off Mortgage Class, final injunctive and declaratory relief is appropriate respecting the class as a whole.  Defendant has acted on grounds generally

12

applicable to the Nationwide Charged-Off Mortgage Class by contending that class members owe interest and fees on "charged off" mortgage loans for time periods during which the class members did not receive periodic mortgage statements.

48.     **Superiority.  Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The damages sought by each Class Member are such that individual prosecution would prove burdensome and expensive.  Even if Class Members could afford individual litigation, it would be an unnecessary burden on the courts.  Individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, a class action will result in substantial benefits to the litigants and the Court by allowing the Court to resolve claims based on a single set of proof in the case.  Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiffs and Class Members and Defendant will likely retain the benefits of its wrongdoing.

**COUNT ONE**
**VIOLATION OF FDCPA, 15 U.S.C. § 1692e**
**(On Behalf of the Nationwide Charged-Off Mortgage Class)**

49.     Plaintiffs incorporate the preceding allegations as if fully set forth herein.

50.     The FDCPA, 15 U.S.C. § 1692e, prohibits debt collectors like Defendant from making false or misleading representations, including false representations as to "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

51.     The Truth in Lending Act (Regulation Z) mandates that a "servicer" like

13

Defendant must send periodic statements to consumers for mortgage loans it owns or services. 12 C.F.R. § 1026.41.

52.    A servicer is exempt from sending periodic statements to consumers for "charged off" mortgage loans; however, the servicer may not "retroactively assess fees or interest on the account" for the period of time during which periodic statements were not sent to a consumer. 12 C.F.R. § 1026.41(e)(6).

53.    Defendant has made false representations as to the "character, amount, or legal status" of Class Members' "charged off" mortgage loans by representing that Class Members owe interest and fees for time periods during which Defendant or its predecessors-in-interest did not send periodic mortgage statements to Class Members.

54.    For example, Plaintiffs' second mortgage loan was charged off in or around February 2009. Plaintiffs have not received a mortgage statement for the loan since December 2008. However, Defendant sent Plaintiffs a letter dated February 2, 2024 which represented that the balance due on the loan was $103,374.87, a sum which included $64,568.58 in interest. The vast majority of that interest accrued over a 15-year time period during which Plaintiffs did not receive a single mortgage statement.

55.    Defendant's representation that it is entitled to collect interest that is not permitted under federal law violates 15 U.S.C. § 1692e(2)(A).

56.    Plaintiffs and members of the Nationwide Charged-Off Mortgage Class are entitled to an award of damages, plus attorneys' fees and costs, for Defendant's violations of 15 U.S.C. §1692e.

## COUNT TWO
## VIOLATION OF TILA AND REGULATION Z, 12 C.F.R. § 1026.41(e)(6)
### (On Behalf of the Nationwide Charged-Off Mortgage Class)

57.     Plaintiffs incorporate the allegations contained in Paragraphs 1 through 48 as if fully set forth herein.

58.     Defendant violated TILA and Regulation Z, 12 C.F.R. § 1026.41(e)(6), by retroactively assessing interest and fees on Plaintiffs' and Class Members' charged-off mortgage loans for time periods during which Defendant or its predecessors-in-interest did not send periodic mortgage statements to Plaintiffs and the Class Members.

59.     Plaintiffs and members of the Nationwide Charged-Off Mortgage Class are subject to ongoing harm absent a declaration that the retroactive interest and fees assessed by Defendant are invalid.  This harm includes the accumulation of additional debt, lost equity in their homes, and ongoing collection activity based on illegal interest and fees.

60.     Plaintiffs and members of the Nationwide Charged-Off Mortgage Class are entitled to a declaratory judgment that all amounts of interest and fees retroactively assessed by Defendant are invalid for time periods during which Defendant or its predecessors-in-interest did not send periodic mortgage statements.

61.     Plaintiffs and the Nationwide Charged-Off Mortgage Class are further entitled to an award of damages, plus attorneys' fees and costs, for Defendant's violations of TILA and Regulation Z, 12 C.F.R. § 1026.41(e)(6).

62.     Finally, Plaintiffs request that the Court enter an order requiring Defendant to disgorge all ill-gotten gains in the form of interest and fees which it collected in violation of TILA and Regulation Z as set forth above.

## COUNT THREE
## VIOLATION OF FDCPA, 15 U.S.C. § 1692f
### (On Behalf of the Nationwide Time-Barred Class)

63. Plaintiffs incorporate the allegations contained in Paragraphs 1 through 48 as if fully set forth herein.

64. The FDCPA, 15 U.S.C. §1692f, prohibits debt collectors such as Defendant from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if…there is no present right to possession of the property claimed as collateral through an enforceable security interest…" 15 U.S.C. § 1692f(6)(A).

65. The statute of limitations to foreclose on Plaintiffs' second mortgage expired in 2018.

66. When Defendant communicated with Plaintiffs in 2024 and made demands for payment of the debt, and initiated foreclosure proceedings on the second mortgage loan, Defendant did not have an "enforceable security interest" in Plaintiffs' home, as the statute of limitations for foreclosure of the mortgage had long since expired.

67. Defendant's representation that it is entitled to foreclose on a mortgage loan when there is no enforceable security interest violates 15 U.S.C. § 1692f.

68. Plaintiffs and members of the Nationwide Time-Barred Class are entitled to an award of damages, plus attorneys' fees and costs, for Defendant's violations of 15 U.S.C. §1692f.

## COUNT FOUR
## VIOLATION OF FDCPA, 15 U.S.C. § 1692g
### (On Behalf of the Nationwide Debt Validation Notice Class)

69. Plaintiffs incorporate the allegations contained in Paragraphs 1 through 48 as

16

if fully set forth herein.

70. The FDCPA, 15 U.S.C. §1692g, provides as follows:

(a) Notice of debt; contents.

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

\*\*\*

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

71. In violation of 15 U.S.C. § 1692g(a)(3), Defendant failed to send Plaintiffs a written notice containing a statement that unless Plaintiffs disputed the validity of the debt within thirty days after receipt of the notice, the debt will be assumed to be valid.

72. In violation of 15 U.S.C. §1692g(a)(4), Defendant failed to send Plaintiffs a written notice containing a statement that if Plaintiffs disputed the validity of the debt within thirty days after receipt of the notice, verification of the debt would be mailed to Plaintiffs.

17

73. In violation of 15 U.S.C. §1692g(a)(5), Defendant failed to send Plaintiffs a written notice containing a statement that upon Plaintiffs' written request, Defendant will provide Plaintiffs with the name and address of the original creditor.

74. Plaintiffs and members of the Nationwide Debt Validation Notice Class are entitled to an award of damages, plus attorneys' fees and costs, for Defendant's violations of 15 U.S.C. §1692g.

**COUNT FIVE**
**VIOLATION OF THE NCCAA, N.C.G.S. §§ 58-70-1, et seq.**
**(On Behalf of the North Carolina Charged-Off Mortgage Class)**

75. Plaintiffs incorporate the the allegations contained in Paragraphs 1 through 48 as if fully set forth herein.

76. Defendant is a "collection agency" for purposes of the NCCAA, as that term is defined in N.C.G.S. § 58-70-15.

77. With respect to Plaintiffs and the North Carolina Charged-Off Mortgage Class, Defendant violated the NCCAA for reasons including, but not limited to, the following:

    a. By falsely representing the character, extent, or amount of the Class Members' mortgage loans, in violation of N.C.G.S. § 58-70-110(4) and -110(6).

    b. By attempting to collect interest and fees on the Class Members' mortgage loans which Defendant was not entitled to, in violation of N.C.G.S. § 58-70-115(2).

78. The foregoing violations of the NCCAA constitute unfair or deceptive acts

18

or practices under Chapter 75 of the General Statutes.

79.     Pursuant to N.C.G.S. § 58-70-130, Plaintiffs and the members of the North Carolina Charged-Off Mortgage Class are entitled to three times the amount of their actual damages, plus attorneys' fees and costs incurred in bringing this action.  Plaintiffs and the members of the North Carolina Charged-Off Mortgage Class are further entitled to statutory damages for each separate violation of the NCCAA by Defendant.

**COUNT SIX**
**VIOLATION OF THE NCCAA, N.C.G.S. §§ 58-70-1, et seq.**
**(On Behalf of the North Carolina Time-Barred Mortgage Class)**

80.     Plaintiffs incorporate the allegations contained in Paragraphs 1 through 48 as if fully set forth herein.

81.     With respect to Plaintiffs and the North Carolina Time-Barred Mortgage Class, Defendant violated the NCCAA for reasons including, but not limited to, the following:

a.     By attempting to collect on the Class Members' mortgage loans when Defendant knew, or reasonably should have known, that such collection was barred by the applicable statute of limitations, in violation of N.C.G.S. § 58-70-115(4).

b.     By representing that nonpayment of the Class Members' mortgage loans would result in foreclosure when foreclosure was not permitted by law, in violation of N.C.G.S. § 58-70-95(6).

c.     By threatening to foreclose, and commencing a foreclosure, when foreclosure was not permitted by law, in violation of N.C.G.S. § 58-

19

70-95(8).

82.    Pursuant to the NCCAA, Plaintiffs and the members of North Carolina Time-Barred Mortgage Class are entitled to three times the amount of their actual damages, plus statutory damages for each separate violation of the NCCAA by Defendant.  Plaintiffs and the members of North Carolina Time-Barred Mortgage Class are further entitled to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed classes, request that the Court:

1.    Grant certification of the proposed classes;

2.    Enter a declaratory judgment that all amounts of interest and fees retroactively assessed by Defendant on Plaintiffs' and Class Members' mortgage loans are invalid for time periods during which Defendant or its predecessors-in-interest did not send periodic mortgage statements.

3.    Award damages to Plaintiffs and the Class Members, including costs and attorneys' fees;

4.    Order Defendant to disgorge all interest and fees which it collected in violation of TILA and Regulation Z;

5.    That a trial by jury be had on all issues so triable; and

6.    Award additional relief as the Court may determine to be just and proper.

Respectfully submitted, this the 21st day of November, 2024.

SCARBROUGH & SCARBROUGH, PLLC:

/s/ John F. Scarbrough

_____
John F. Scarbrough
N.C. Bar No. 41569
141 Union Street South
Concord, NC  28025
Tel. (704) 782-3112
Fax (704) 782-3116
jfs@sandslegal.net


MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, LLC

/s/ James R. DeMay

_____
James R. DeMay
N.C. Bar No. 36710
900 W. Morgan Street
Raleigh, NC 27603
Tel. (919) 600-5000
jdemay@milberg.com

# EXHIBIT 1



# McMichael Taylor Gray, LLC

3550 Engineering Drive | Suite 260 | Peachtree Corners, GA 30092
Office: 404-474-7149 | Fax: 404-745-8121

February 2, 2024

VIA FIRST CLASS U.S. MAIL

Daniel E Jimenez
Deborah Jimenez
103 North Chase Drive
Concord, NC 28027

| RE: | | |
|---|---|---|
| | File No: | 23-002302-01 |
| | Mortgagor(s): | Daniel Jimenez and Deborah Jimenez |
| | Property Address: | 103 North Chase Drive, Concord, NC 28027 |
| | Loan #: | XXXXXX7767 |

Dear Sir(s) and/or Madam(s):

The above-referenced loan is in default because of a failure to pay the required amounts due as established by a Note dated **December 27, 2006** (or any modifications of said Note) which is secured by a Deed of Trust on the above referenced property. Pursuant to North Carolina General Statutes 45-21.16 (5a), as of the date of this letter, the total amount due on the loan ("payoff") is as shown below, which includes past due payments, accrued interest, escrow (if applicable), late charges (if any), and any additional fees and costs. Below is an itemized breakdown of the total amount due:

| Principal Balance: | $37,453.86 |
|---|---|
| Interest: | $64,568.58 |
| Attorney Fees & Costs: | $1,352.43 |

**\*\*\*THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. IF YOU HAVE RECEIVED A DISCHARGE IN A CHAPTER 7 BANKRUPTCY, WE ARE AWARE YOU ARE NOT PERSONALLY OBLIGATED FOR THIS DEBT AND THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY.\*\*\***

| | |
|---|---|
| Taxes: | $0.00 |
| Insurance: | $0.00 |
| Payments/Credits: | $0.00 |
| Suspense: | $0.00 |
| **TOTAL DUE:** | **$103,374.87** |
| | |
| Per Diem | $11.29 |
| Current Interest Rate | 11.00% |

In order to verify the total amount due, please contact 404-474-7149 prior to submitting funds. Certified funds must be sent (certified check, cashier's check, or money order) to:

**Real Time Resolutions, Inc.**
**1349 Empire Central Drive**
**Dallas, TX 75247**

Please be advised that because of interest, late fees, and various other charges, the total amount due, as referenced above, may change daily. Hence, if payoff funds are sent to our office reflecting the amount referenced above, an adjustment may be necessary. If the amount forwarded to this office is insufficient to pay off the debt entirely, this office will relay this information before depositing the check for collection.

If you have received a discharge in a Bankruptcy proceeding and this debt was not reaffirmed, this notice is not intended to indicate that you are personally liable for this debt or that we are attempting to collect a debt from you. In this instance, the information concerning the associated debt owed is for informational purposes only and should be disregarded for any purpose other than that of conducting a foreclosure and/or exercising in rem rights and obligations under the security instrument pursuant to applicable state and federal law.

Respectfully,

McMichael Taylor Gray, LLC

***THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. IF YOU HAVE RECEIVED A DISCHARGE IN A CHAPTER 7 BANKRUPTCY, WE ARE AWARE YOU ARE NOT PERSONALLY OBLIGATED FOR THIS DEBT AND THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY.***

# EXHIBIT 2



## McMichael Taylor Gray, LLC

3550 Engineering Drive | Suite 260 | Peachtree Corners, GA 30092
Office: 404-474-7149 | Fax: 404-745-8121

May 30, 2023

Daniel Jimenez

Concord, NC 28027

RE:   Our File No:                    1100
       Borrower(s):       Daniel Jimenez
       Property Address:                  Concord, NC 28027
       Account Number:

Dear Sir(s) and/or Madam(s):

You are in default on the above-referenced account. A payment was last received and applied to
the installment due on June 1, 2008. The July 1, 2008 payment and succeeding payments of
principal and interest are now required by the Note and Deed of Trust executed on December 27,
2006.
**Additionally, this loan matured as of 01/01/2022; therefore, the full amount of the loan is
due.**
The Note is secured by a Deed of Trust on the property located at 103 North Chase Drive,
Concord, NC 28027.

Under the terms and conditions of the Note and Deed of Trust you are hereby notified of the
following:

   1.  You are in default because you have failed to pay the required monthly installments and
       late charges and **this loan matured as of 01/01/2022; therefore, the full amount of the
       loan is due.** As of the date hereof, a total of $98,966.32 is due on the loan, which
       includes: past due payments, accrued interest, escrow (if applicable), late charges (if
       any), and any additional fees. This past due amount is itemized below.

***THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE. IF YOU HAVE RECEIVED A DISCHARGE IN A CHAPTER 7 BANKRUPTCY, WE ARE
AWARE YOU ARE NOT PERSONALLY OBLIGATED FOR THIS DEBT AND THIS NOTICE IS FOR INFORMATIONAL PURPOSES
ONLY.

| Unpaid principal balance | $37,453.86 |
| --- | --- |
| Interest | $61,512.46 |
| BPO/Appraisal | $0.00 |
| Prior Default Fees & Costs | $0.00 |
| Property Inspections & Preservation | $0.00 |
| Loan Charges/Fees | $0.00 |

2. To cure the default, you must pay the past due amount to Real Time Resolutions, Inc. within 45 days from the date of this letter. Any additional monthly payments and charges that fall due within the next 45 days must also be paid to bring your account current. In order to verify the total amount due, please contact 404-474-7149 prior to submitting funds. You must send certified funds (certified check, cashier's check, or money order) to:

Real Time Resolutions, Inc.
PO Box 840923
Dallas, TX 75284

3. Your failure to cure the default within 45 days of the date of this letter may result in acceleration of the sums secured by said Deed of Trust and a foreclosure sale of your property, as well as other remedies available to the Lender;

4. You have the right to reinstate the loan after acceleration in accordance with the terms of the Note and Deed of Trust; and

5. You have the right to bring a court action to assert the non-existence of a default or any other legal defense to acceleration and sale.

Alternatives to foreclosure may be available. If you are unable to pay the past due amount, your lender may have loss mitigation programs that might help you resolve your default and keep your home. They need to talk with you to discuss those options and determine which of them might be appropriate for your circumstances. Please call them as soon as possible at:

Real Time Resolutions, Inc.
1349 Empire Central Drive, STE 150
Dallas, TX 75247
877-599-7334

***THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. IF YOU HAVE RECEIVED A DISCHARGE IN A CHAPTER 7 BANKRUPTCY, WE ARE AWARE YOU ARE NOT PERSONALLY OBLIGATED FOR THIS DEBT AND THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY.

In addition, there are homeownership counseling services available to borrowers. Such counseling is available through a variety of nonprofit organizations experienced in homeownership counseling and approved by the Secretary of Housing and Urban Development (HUD).

Two HUD-approved homeownership counseling agencies are:

CCCS of Raleigh    Triangle Family Services: 3937 Western Blvd
                                             Raleigh, NC 27606
                                             919-821-0790
                                             https://tfsnc.org

Community Link:                              601 East 5th Street, Suite 220
                                             Charlotte, NC 28202
                                             800-977-1969
                                             www.communitylinknc.org

A more complete list of agencies can be obtained by calling or writing the State Home Foreclosure Prevention Project of the Housing Finance Agency at the contact information below:

3508 Bush Street
Raleigh, NC 27609
888-442-8188
www.ncforeclosureprevention.gov

Respectfully,

McMichael Taylor Gray, LLC

***THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. IF YOU HAVE RECEIVED A DISCHARGE IN A CHAPTER 7 BANKRUPTCY, WE ARE AWARE YOU ARE NOT PERSONALLY OBLIGATED FOR THIS DEBT AND THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY.